UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY L. KIESGEN,

        Plaintiff,                               Case No. 09-13396
                                                              Honorable David M. Lawson
v.

ST. CLAIR MARINE SALVAGE, INC.,

        Defendant.

_____/

**<u>OPINION AND ORDER GRANTING PLAINTIFF'S MOTIONS TO STRIKE
THIRD-PARTY COMPLAINT AND REMAND TO STATE COURT,
DENYING DEFENDANT'S MOTION TO SET ASIDE DEFAULT
AS MOOT, AND REMANDING CASE TO STATE COURT</u>**

This case involves a dispute over the price charged by defendant St. Clair Marine Salvage, Inc. for services rendered in freeing a vessel that plaintiff Gregory L. Kiesgen ran aground in the shallow waters of Lake St. Clair. After the boat was freed, the plaintiff successfully piloted it to a marina, where he put it on a trailer and transported it to his home, but he refused to pay the defendant for the charges, which he alleges are inflated and far in excess of the quoted price. In response, the defendant took possession of the boat and asserted a salvage lien. The plaintiff then filed a tort action in state court to recover his boat, and the defendant removed the action to this Court and attempted to file an untimely third-party complaint against the vessel, invoking the Court's admiralty jurisdiction. In the meantime, because the defendant failed to file a timely answer to the plaintiff's complaint in this Court, the Clerk entered a default. Presently before the Court are the plaintiff's motions to remand the case to state court and strike the third-party complaint, and the defendant's motion to set aside the default. The Court heard oral argument on these motions on December 22, 2009, at which time the parties expressed a desire to attempt a resolution of their

dispute through mediation facilitated by the magistrate judge. That attempt was unsuccessful, and the motions are now ready for decision. For reasons explained below in detail, the Court finds that it does not have subject matter jurisdiction over the original complaint, the removal therefore was improper, the defendant's attempt to implead an admiralty action must be rejected, and the absence of jurisdiction renders the Clerk's entry of default a nullity. Therefore, the Court will grant the plaintiff's motions to remand and strike the third-party complaint, and deny the defendant's motion to set aside the default as moot.

I.

On a Sunday morning in August last year, the plaintiff, Gregory L. Kiesgen, piloted his 48' Sea Ray yacht, which he purchased two months previously for $425,000 and named *Toys "For" Us*, into shallow waters near the western shore of Lake St. Clair and ran it aground in approximately eighteen inches of water. He called defendant St. Clair Marine Salvage, Inc. for assistance. According to the complaint, the defendant's employee, Jason Elliott, came to the scene and quoted the plaintiff a price to tow the vessel from the marsh and free it based on the following formula: "the towing fee would be calculated by multiplying $20.00 by the length of Plaintiff's Boat (48 feet), by the number of hours to tow the Boat, and by the number of boats used ("Quoted Rate"; $960.00 per towing boat per hour)." Compl. ¶ 10. Apparently this was not a simple task. But three rescue boats and four hours later, *Toys "For" Us* was freed from the marsh. It was only then, the plaintiff alleges, that Elliott told him that the charges could run between $60,000 and $75,000.

The charges were not nearly that expensive. However, instead of the $2,500-2,800 that the plaintiff anticipated based on Elliott's original quote, the defendant presented the plaintiff with the bill of $26,260. When the plaintiff refused to pay the bill, the defendant came to the plaintiff's

house and towed the boat away, asserting a salvage lien against the vessel. The defendant then assessed a surcharge of $4 per day per foot of vessel length on account of storage and a $750 impound fee.

On August 21, 2009, the plaintiff sued the defendant in Macomb County, Michigan circuit court in a seven-count complaint alleging: (1) invalidity of the lien and seeking declaratory and injunctive relief declaring the charge for towing the boat excessive and the lien invalid; (2) claim and delivery for the wrongful taking of the boat without legal justification; (3) conversion; (4) statutory conversion; (5) fraudulent misrepresentation; (6) violation of the Michigan Consumer Protection Act; and (7) negligence. On August 24, 2009, the plaintiff served the defendant with a summons and complaint and a motion for immediate possession pending final judgment pursuant to Mich. Ct. R. 3.105(E)(1) & (2)(a).

Three days later, on August 27, 2009, the defendant removed the case to this Court. When doing so, the defendant filed a complaint naming *Toys "For" Us* as the defendant, followed by a notice of removal. The Clerk marked the entry of St. Clair Marine Salvage, Inc.'s complaint against the *in rem* defendant as "Filing Error – See Notice of Removal" and proceeded with the removal in a usual manner. On September 14, 2009, the plaintiff moved to remand.

In the meantime, the plaintiff continued to litigate the case in the state court. On August 31, 2009, after the defendant filed its notice of removal, served the plaintiff, and informed the state court of the same, the state court held a hearing on the plaintiff's motion for possession of the boat over the defendant's objections. On the same date, the state court entered an order instructing the defendant to return the boat to the plaintiff. However, on September 4, 2009, it appears that the state judge reconsidered his previous decision and instead gave the defendant seven days to object to the

order to return the boat. It is unclear whether the state court ultimately ordered the return of the boat to the plaintiff, but at the motion hearing the parties confirmed that the plaintiff is in possession of the boat.

On September 11, 2009, the defendant inexplicably filed an answer to the complaint in the state court but filed no such answer in this Court, to which the defendant itself had removed the case. Therefore, on September 15, 2009, the plaintiff requested the Clerk to enter a default pursuant to Federal Rule of Civil Procedure 55(a). The Clerk entered the default on September 17, 2009, and the defendant moved to set it aside on the same day.

Despite its unsuccessful attempt at the time of removal to bring an action against the vessel *in rem*, the defendant made another try to convert the action into an *in rem* proceeding on September 30, 2009 by filing a third-party complaint naming the boat as the third-party defendant. The defendant labeled the case as one of admiralty and maritime jurisdiction under Federal Rule of Civil Procedure 9(h) and Supplemental Rule for Admiralty or Marine Claims and Asset Forfeiture Actions C(1)(a). The plaintiff moved to strike the third-party complaint on October 14, 2009.

After presenting oral argument on the motions, the parties acknowledged to the Court that attorney's fees could quickly consume the approximately $30,000 in dispute. They agreed to seek help from the magistrate judge to settle the case, but apparently settlement efforts have not borne fruit. Further cultivation of the parties' claims must occur in the state court, however, because the defendant's removal of the plaintiff's state court action to this Court was improper.

II.

The federal district courts are courts of "limited jurisdiction," and the burden of establishing jurisdiction rests with the defendant as the party removing the case and asserting federal jurisdiction.

*See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "Because lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts resolved in favor of remand." *Brown v. Francis*, 75 F.3d 860, 864-65 (3d Cir. 1996) (quoting *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985); *see also Her Majesty The Queen In Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 339 (6th Cir. 1989); *Jacada (Europe), Ltd. v. Int'l Mktg. Strategies, Inc.*, 401 F.3d 701, 704 (6th Cir. 2005) (citing *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999)), *abrogated on other grounds by Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576 (2008).

Section 1441(a) of Title 28 provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." There is no suggestion that the parties to this action are citizens of different states, and therefore there can be no subject matter jurisdiction under 28 U.S.C. § 1332(a). However, federal courts have jurisdiction over actions "arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, and such a case may be removed by the defendant if the complaint is based on federal law. *See* 28 U.S.C. § 1441(b). If a matter over which this Court lacks subject matter jurisdiction is removed to this Court, "the case shall be remanded. . . . The State court may thereupon proceed with such case." 28 U.S.C. 1447(c). Federal courts "look to the complaint at the time of removal, . . . and determine whether the action was properly removed in the first place." *Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 453 (6th Cir. 1996).

The defendant resists the plaintiff's remand motion by asserting that its third-party complaint invokes this Court's exclusive admiralty jurisdiction, and therefore the dispute over the price charged for towing the vessel off the lake bottom should be adjudicated in the context of its effort to enforce a salvage lien by proceeding against the vessel *in rem*. There are several problems with that argument.

First, as explained below, admiralty jurisdiction is not a proper basis upon which to predicate removal after the plaintiff elected to pursue common law remedies in state court. Second, removability must be based on the claims in the complaint, not on defenses or counterclaims. Third, the attempt to implead the *in rem* action was tardy and therefore ineffective.

Congress has granted to federal district courts exclusive jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction"; but the statute also "sav[es] to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1). Therefore, a case may fall within the federal court's admiralty jurisdiction, but it also may be subject to state law remedies.

For claims sounding in contract, a case may be brought under section 1333(1) if it involves claims under a "'maritime contract,' which in turn 'depends upon the nature and character of the contract, and the true criterion is whether [the contract] has reference to maritime service or maritime transactions.'" *New Hampshire Ins. Co. v. Home Sav. & Loan Co. of Youngstown, Ohio*, 581 F.3d 420, 423 (6th Cir. 2009) (quoting *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 24 (2004)). The contract does not become a "maritime contract" just because it relates to boats. Rather, the inquiry is focused on whether "the principal objective of a contract is maritime commerce." *Kirby*, 543 U.S. at 25. For claims sounding in tort, there is jurisdiction under section 1333(1) where (a) there is a potential hazard to maritime activity and (b) when there is a substantial relationship between the

activity giving rise to the incident and traditional maritime activity. *Sisson v. Ruby*, 497 U.S. 358, 362-63 (1990) (citing *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 674 (1982)). The court must ask whether "'a tortfeasor's activity, commercial or noncommercial, on navigable waters is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand.'" *Ayers v. United States*, 277 F.3d 821, 826 (6th Cir. 2002) (quoting *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 539-40 (1995)).

Under the test for contract actions, it would not be difficult to determine that the present dispute over the price for towing the plaintiff's yacht into deeper water involved "maritime service." However, the plaintiff's state court action raised tort claims, and the question whether the defendant's self-help seizure of the vessel from the plaintiff's property on dry land was substantially related to traditional maritime activity is a close one.

Nonetheless, even if the suit falls within this Court's maritime jurisdiction, "the Supreme Court has clearly held that the 'saving' clause [in section 1333(1)] leave[s] state courts competent to adjudicate maritime causes of action in proceedings *in personam*, that is, where the defendant is a person, not a ship or some other instrument of navigation." *In re Chimenti*, 79 F.3d 534, 537 (6th Cir. 1996) (citing *Madruga v. Superior Ct. of State of Cal.*, 346 U.S. 556, 560-61 (1954) (internal quotation marks omitted)). And the Sixth Circuit has clearly stated that federal courts must respect the plaintiff's original choice of forum. *Id.* at 537-38. As the court explained:

> Courts have consistently interpreted the "saving clause" to preclude removal of maritime actions brought in state court and invoking a state law remedy, provided there is no independent federal basis for removal, such as diversity jurisdiction. Although the Supreme Court has never directly held that removal is prohibited, lower courts have relied on strongly worded *dicta* in *Romero v. International Terminal Operating Co.*, 358 U.S. 354 (1959), which support preserving the plaintiff's choice

of forum. *Romero*'s actual holding was that general maritime law claims do not fall under Congress's grant of federal question jurisdiction in 28 U.S.C. § 1331. *Id.* at 378-79. . . . In arriving at such a conclusion, though, the Court observed that if the rule were otherwise,

> the historic option of a maritime suitor pursuing a common-law remedy to select his forum, state or federal, would be taken away. . . . By making maritime cases removable to the federal courts it would make considerable inroads into the traditionally exercised concurrent jurisdiction of the state courts in admiralty matters — a jurisdiction which it was the unquestioned aim of the saving clause of 1789 to preserve.

*Id.* at 371-72. . . . Earlier in the opinion, the Court noted, "The removal provisions of the original Judiciary Act of 1789, 1 Stat. 79, conferred a limited removal jurisdiction, not including cases of admiralty and maritime jurisdiction. In none of the statutes enacted since that time have saving-clause cases been made removable." *Id.* at 363 n.16. . . .

In short, it is settled that actions brought in state court under the "saving to suitors" clause are not generally removable. This makes sense, since the entire purpose of the saving clause was to give claimants pursuing a common-law remedy the ability to choose their forum, and such purpose would be completely diluted if defendants were allowed to remove saving-clause actions just like any other federal action. *See generally* 14 Wright, Miller & Cooper § 3674, at 460-68. Although the [plaintiffs] could have commenced their maritime action in federal court, once they selected state court, that choice could not be disturbed. Because defendants . . . cannot show the presence of one of the additional requirements for federal jurisdiction found in 28 U.S.C. §§ 1331 or 1332 (an independent federal question or complete diversity of the parties), we conclude that removal was improper.

*In re Chimenti*, 79 F.3d at 537-38.

Consequently, in the present case, removal on the basis of admiralty jurisdiction is ineffective, since the plaintiff, having filed the action originally in state court, is deemed to have elected to pursue traditional common law remedies to resolve the dispute. *See Bonnette v. Shell Offshore, Inc.*, 838 F. Supp. 1175, 1181 (S.D. Tex. 1993) (holding that a plaintiff need not plead the "saving to suitors" exception to exclusive federal jurisdiction to make his election). In fact, if the *plaintiff* intended to bring his claim under the Court's admiralty or maritime jurisdiction, he must affirmatively designate *that* election. *See* Fed. R. Civ. P. 9(h); *Greenwell v. Aztar Indiana Gaming*

*Corp.*, 268 F.3d 486, 493-94 (7th Cir. 2001) ("The purpose is to enable the plaintiff to notify his opponent and the court that he's invoking those rules . . . when, having another basis for federal jurisdiction, he could just rely on the ordinary civil rules. If he doesn't so indicate, by means of the statement or otherwise, . . . the case proceeds under the ordinary civil rules. Since the plaintiff by thus forgoing the use of the admiralty rules surrenders whatever advantages he might derive from them, there is no reason to permit the defendant to invoke them either."); *Harrison v. Flota Mercante Grancolombiana, S.A.*, 577 F.2d 968, 987 (5th Cir. 1978) (refusing to "permit a third-party defendant to emasculate the election given to the plaintiff by Rule 9(h) by exercising the simple expedient of bringing in a fourth-party defendant"). Once the election to proceed under the common law occurred, admiralty jurisdiction was not a proper basis for removal. Rather, the defendant was required to show another independent ground for federal jurisdiction, that is, either a discrete federal question or diversity of citizenship. The defendant has shown neither.

The defendant's clumsy attempt to enforce its salvage lien through an *in rem* third-party action against the vessel does not furnish an independent basis for federal jurisdiction. Of course, the defendant has a colorable claim for such a lien. Salvage is "'the compensation allowed to persons by whose assistance a ship or her cargo has been saved, in whole or in part, from impending peril on the sea.'" *Bartholomew v. Crowley Marine Servs., Inc.*, 337 F.3d 1083, 1085 (9th Cir. 2003) (quoting *The Blackwall*, 77 U.S. (10 Wall.) 1, 12 (1869)). To support a salvage claim, the plaintiff must establish three elements: "1. A marine peril. 2. Service voluntarily rendered when not required as an existing duty or from a special contract. 3. Success in whole or in part, or that the service rendered contributed to such success." *Dorrington v. City of Detroit*, 223 F. 232, 239 (1915); *accord United States v. EX-USS CABOT/DEDALO*, 297 F.3d 378, 381-82 (5th Cir. 2002). The salvage lien

enjoys a status as a preferred maritime lien which is superior to most security interests, including a ship mortgage. *See* 46 U.S.C. § 31301(5)(F); *see also Faneuil Advisors, Inc. v. O/S Sea Hawk*, 50 F.3d 88, 92 (1st Cir. 1995). A salvor also enjoys "the right to possession of the salved property, a right exclusive even of the owner, until such time as the salvage lien on the property is extinguished or adequate security for this obligation is given." *Treasure Salvors, Inc. v. Unidentified Wrecked & Abandoned Sailing Vessel*, 640 F.2d 560, 567 (5th Cir. 1981). In order to enforce a salvage lien, a salvor may commence an *in rem* proceeding agianst the property in the district where the ship or cargo is located. *See* Suppl. R. of Admiralty or Maritime Claims & Asset Forfeiture Actions C(1)(a) ("An action in rem may be brought . . . [t]o enforce any maritime lien."). The salvor may also enforce its claim for salvage service through an *in personam* action against the owner. *See* Suppl. R. C(1)(b) (stating that "a party who may proceed in rem may also, or in the alternative, proceed in personam against any person who may be liable"); *see also R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 963 (4th Cir. 1999).

However, even if the third-party complaint states a federal claim to enforce the salvage lien, it is not a proper ground for removal. "[I]t is well settled that federal counterclaims and defenses are 'inadequate to confer federal jurisdiction.'" *Chase Manhattan Mortg. Corp. v. Smith*, 507 F.3d 910, 914-15 (6th Cir. 2007) (citing *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) ("A defense that raises a federal question is inadequate to confer federal jurisdiction."); *Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002) ("[A] counter-claim — which appears as part of the defendant's answer, not as part of the plaintiff's complaint — cannot serve as the basis for 'arising under' jurisdiction.")).

Finally, although a defendant normally would be permitted to file a third-party complaint in admiralty against a defendant *in rem* under Federal Rule of Civil Procedure 14(a)(6), in this case the defendant's impleader comes too late because, at the time the third-party complaint was filed on September 30, 2009, the defendant was in default. A party in default may not plead to otherwise proceed until the default is set aside. *See Newhouse v. Probert*, 608 F. Supp. 978, 985 (W.D. Mich. 1985); *see generally* Moore's Federal Practice § 55.03[2] ("'When a party is in default . . . the party himself has lost his standing in court, cannot appear in any way, cannot adduce any evidence, and cannot be heard at the final hearing.'") (quoting *Clifton v. Tomb*, 21 F.2d 893, 897 (4th Cir. 1927)); Therefore, the defendant's third-party complaint must be stricken. *Newhouse*, 608 F. Supp. at 985.

That brings us to the Clerk's entry of a default against the defendant, which occurred after removal from state court. The defendant argues that the filing of its answer in state court was adequate to respond to the complaint, since the state court had jurisdiction over the motion for possession pending judgment, despite the removal notice. Once a removal notice is filed, "the State court shall proceed no further unless and until the case is remanded." 28 U.S.C. § 1446(d). Therefore, the defendant filed its answer to the complaint in the wrong, which could not stave off a default.

Nonetheless, the Clerk's action of entering the default cannot stand. Since removal was improper, the Court is without subject matter jurisdiction over the case, and its actions while the case was pending are a nullity. *See U.S. Fidelity & Guar. Co. v. Thomas Solvent Co.*, 955 F.2d 1085, 1087 (6th Cir. 1992) (stating that, where the Court did not have diversity jurisdiction over the case, all actions in the district court were void); *see also In re Texlon Corp.*, 596 F.2d 1092, 1099 (2d Cir. 1979) (stating that an order is void if "the court that rendered it lacked jurisdiction of the subject

matter, or of the parties, or if it acted in a manner inconsistent with due process of law") (quoting Charles Alan Wright & Arthur R. Miller, 11 Fed. Practice & Procedure § 2862, at 198 (1973)). Accordingly, the entry of default has no effect.

III.

The Court concludes that it does not have subject matter jurisdiction over the present action, and removal was improper. The matter, therefore, must be remanded to state court. The third-party complaint was filed out of time and when the defendant was in default and will be stricken. The default entered against the defendant in this court is a nullity.

Accordingly, it is **ORDERED** that the plaintiff's motions to strike the third-party complaint and remand to state court [dkt #s 13, 3] are **GRANTED**.

It is further **ORDERED** that the default entered by the Clerk is **VACATED**.

It is further **ORDERED** that the defendant's motion to set aside the default [dkt # 6] is **DENIED as moot**.

It is further **ORDERED** that the case is **REMANDED** to the Macomb County, Michigan circuit court.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: July 12, 2010

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 12, 2010.

                                  s/Susan K. Pinkowski
                                  SUSAN K. PINKOWSKI